IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No: 1:15-CR-3 |
| v. | ) | |
| | ) | The Honorable Gerald Bruce Lee |
| LAMONT ANDRE THOMAS, | ) | |
| | ) | Sentencing Date: September 9, 2015 |
| Defendant. | ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S
### MOTION TO DISMISS THE INDICTMENT

The United States of America, through its attorneys, Dana J. Boente, United States

Attorney, and Jonathan L. Fahey and Michael J. Frank, Assistant United States Attorneys,

respectfully submits this response in opposition to the defendant's pro se motion to dismiss the

indictment (Doc. # 53).   This Court should deny the defendant's motion because the issue raised

in the defendant's motion is moot, has been repeatedly waived by the defendant and is completely

lacking in merit.

### FACTUAL BACKGROUND

From February to April 2010, the defendant participated in three armed robberies of

of gas stations and convenience stores.   The defendant's role in the robberies was that of a lookout

and driver.   The defendant's brother, Eugene Thomas, was apprehended after committing a dozen

armed robberies.   Eugene Thomas pleaded guilty and provided information about the defendant's

involvement as part of the cooperation requirement in his plea agreement.

On April 24, 2012, the defendant was arrested by Fairfax County for unrelated robberies.

On March 25, 2013, while the defendant was still in Fairfax County custody, the United States

sought and obtained a criminal complaint and arrest warrant for the defendant.   The Criminal

Complaint, signed by Judge Theresa Carroll Buchanan, charged the defendant with having

committed one Hobbs Act Robbery on March 19, 2010.   Because the defendant was in the

custody of Fairfax County, the United States lodged a detainer with Fairfax County.

On January 15, 2014, in the Circuit Court of Fairfax County, the defendant was found

guilty of Attempted Grand Larceny from the Person.   On February 28, 2014, the defendant was

sentenced to 6 years, with all but ten months of imprisonment suspended.

On November 6, 2014, the defendant had completed his term of imprisonment and was

arrested pursuant to the federal warrant issued in March 2013.   On November 7, 2014, a probable

cause and detention hearing was held before Magistrate Judge John F. Anderson.   At no time

during this hearing did the defendant seek to have the complaint dismissed based on any alleged

violation of the Interstate Agreement on Detainers or the Speedy Trial Act.   Judge Anderson

found probable cause and ordered the defendant detained pending trial.   (Doc. #14).

On November 20, 2014, the parties filed a joint motion seeking to extend the deadline to

indict the defendant.   (Doc. #15).   In that joint motion, which was signed by the defendant and

his attorney, the defendant and his attorney agreed that, under the Speedy Trial Act, the deadline to

indict the defendant was December 5, 2014.   The defendant adopted this position and did not

claim that the Speedy Trial Act or the Interstate Agreement on Detainers had been violated.

Instead of pursuing what he now claims is a meritorious speedy trial claim, the defendant spent his

time in jail attempting to obstruct justice by encouraging his brother to not only recant his prior

testimony, but to also refuse fulfill his plea agreement.   Judge Leonie M. Brinkema granted the

motion and extended the deadline to indict until January 7, 2015.   (Doc. #16).

2

On January 7, 2015, a federal grand jury charged the defendant with four counts:   (1) Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); (2) Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and (3) two counts of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).   (Doc. #17).   Count 2 was for the robbery that the defendant originally charged by complaint.   The remaining three counts had not been charged in the criminal complaint.   This Court arraigned the defendant on January 13, 2015.   At the arraignment, this Court set a trial date of March 16, 2015. At no time during this arraignment did the defendant object that his Indictment or this trial date violated the Interstate Agreement on Detainers or the Speedy Trial Act.

A jury trial commenced on March 16, 2015.   At no time before or during this trial did the defendant object that the Indictment or this trial date violated the Interstate Agreement on Detainers or the Speedy Trial Act.   The jury could not reach a verdict, and on March 19, 2015, this Court declared a mistrial.   A new trial was set for June 1, 2015.   The defendant did not object that this new trial date violated the Interstate Agreement on Detainers or the Speedy Trial Act.

On April 17, 2015, the defendant pleaded guilty to Count Four of the Indictment, which charged him with Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).   This charged was originally charged as part of the January 7, 2015 indictment and had not been charged previously by complaint.   At no time during this plea hearing did the defendant object that the Indictment violated the Interstate Agreement on Detainers or the Speedy Trial Act.

On April 21, 2015, the United States moved to dismiss Counts One through Three of the Indictment.   (Doc. # 46).   Also on April 21, 2015, this Court granted this motion to dismiss

3

Counts One through Three of the Indictment.   (Doc. #47).   Notably, the count charged in the criminal complaint was dismissed at this time and there is no indictment pending against the defendant.

On July 30, 2015, eight days before the defendant was scheduled to be sentenced, the defendant filed a pro se "Motion to Dismiss Indictment."   (Doc. #53).   In that motion, the defendant argues that the indictment should be dismissed because the Interstate Agreement on Detainers and the Speedy Trial Act had been violated in his case.

**ARGUMENT**

**I.   There Was No Violation of the Interstate Agreement on Detainers**

Article III of the Interstate Agreement on Detainers states that the defendant shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court written notice of the place of his imprisonment and his request for a final disposition to be made of his criminal complaint.   Because the defendant never did that, there was no violation of the Interstate Agreement on Detainers.

"Because of the severity of the remedy [for IADA violations], a prisoner must strictly comply with the formal notice requirements of the Act."   *United States v. Reed,* 910 F.2d 621, 624 (9th Cir. 1990); *see United States v. Thomas,* 342 F. App'x 891, 893 (4th Cir. 2009) (denying relief under the IADA after noting that the defendant failed to strictly comply with the requirements of the IADA); *United States v. Henson,* 954 F.2d 430, 434 (1st Cir. 1991) (stating that strict compliance with Article III is necessary to place prosecuting authority on notice that 180-day provision has been invoked).   When a violation of the Interstate Agreement on Detainers is alleged, the burden is on the defendant to demonstrate that he satisfied the requirements of the

4

IADA.   *Id.*; *Childress v. Ohio*, 836 F.2d 1347 (6th Cir. 1988).

The IADA is a detailed statute, setting forth several requirements that a prisoner must meet to trigger the 180 day time limit. 18 U.S.C. App. § 2, Article III, for example requires that the prisoner "cause to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his imprisonment and this request for a final disposition . . . " and mandates that "the request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, . . . "   18 U.S.C. App. § 2, Art III(a).   Courts have interpreted the IADA to impose strict and exact requirements on the prisoner seeking to avail himself of its extraordinary remedy.   *Fex v. Michigan*, 507 U.S. 43, 48 (1993); *United States v. Bell,* 168 F.3d 483 (4th Cir. 1998).   "The Supreme Court has strictly interpreted the IADA's notice requirement, holding that 'the 180-day time period [in the IADA] does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.'"   *United States v. Dooley*, 580 F.3d 682, 685 (8th Cir. 2009) (quoting *Fex*, 507 U.S. at 52).   The requirement of strict compliance has its roots in fundamental fairness: as the Supreme Court noted in *Fex*, it is the most reasonable interpretation of the IAD to believe that "receiving State's prosecutors are in no risk of losing their case until they have been *informed* of the request for trial."   *Id.*, at 51 (emphasis in original).

Although the defendant claims that he notified a United States Magistrate Judge that he wished to be brought to the District Court to be tried, such letters are typically docketed and placed in the Court's file.   There is no record of the defendant ever having sent such a letter.   The defendant also claim that he wrote letters to two Special Assistant United States Attorneys to

request that he be brought to the District Court and speedily tried.   There is no record that any

such letters were sent by the defendant or received by the U.S. Attorney's Office.

Regardless, even if this Court believed the defendant's unsubstantiated claims that he

informed the Court and the U.S. Attorney's Office of his desire to be tried expeditiously, he did not

comply with the IADA.   He claims that he wrote letters to the judge and prosecutors and informed

his attorney of his desire to resolve the case.   He does not claim—much less establish—that he

attached a certificate of the appropriate official stating the term of commitment on which he was

being held.   It is again worth noting that the defendant focused his attention on obstructing justice

and encouraging his brother to recant, rather than asserting a right to a speedy trial, which he

repeatedly waived after being brought to Alexandria.   Because the defendant never complied with

the IADA, his claim should be denied.

## II.    The Defendant Waived His Claim On Multiple Occasions

Even if the defendant had filed a written notice with this Court and had informed the U.S.

Attorney's Office, to preserve this issue, he had to have raised it when his trial date was set by this

Court.   *See Reed v. Farley*, 512 U.S. 339, 342 (1994).   Here, the defendant appeared in Court on

multiple occasions, but never once raised this issue until eight days before his sentencing.   The

defendant did not raise this issue at arraignment, at any point during his trial, or during the entry of

his guilty plea.   Rather, he raised the issue for the first time when he filed the instant motion

before this Court eight days before his scheduled sentencing.

The defendant further waived any claim under the IADA or the Speedy Trial Act when he

pleaded guilty to Count Four of the indictment on April 17, 2015.   *United States v.*

*Moreno-Serafin*, 251 F. App'x 185, 187 (4th Cir. 2007) (By "knowingly and voluntarily pleading

guilty, Moreno–Serafin waived his right to claim a Speedy Trial Act violation."); *United States v. Gines*, 964 F.2d 972, 977 (10th Cir. 1992) (plea of guilty waives all non-jurisdictional defects, and a violation of the Speedy Trial Act is a non-jurisdictional defect); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("By pleading guilty, Bohn waived his right to assert a violation of the Speedy Trial Act. . . .   The right to a speedy trial under the Speedy Trial Act is nonjurisdictional.").   Like the Speedy Trial Act, the IADA is also non-jurisdictional, and any alleged violations are also waived by entry of a guilty plea.   *United States v. Palmer*, 574 F.2d 164, 167-68 (3d Cir. 1978) (holding that any violation of the Interstate Agreement on Detainers was non-jurisdictional and, therefore, waived by the defendant's guilty plea); *see Baxter v. United States,* 966 F.2d 387, 389 (8th Cir. 1992); *Kowalak v. United States,* 645 F.2d 534, 537 (6th Cir.1981); *United States v. Wilson,* 737 F. Supp. 599, 600 (D. Nev. 1990) (recognizing that the entry of a guilty plea by a defendant precludes him from obtaining post-conviction relief from the government's failure to comply with the IADA).

When the defendant pleaded guilty Count Four of the indictment on April 17, 2015, he waived his right to seek to enforce the IADA.   This guilty plea also provided a substantial benefit to the defendant, because it included the dismissal of the three remaining counts of the indictment which would likely have led to a considerably greater sentence.

## III.    The Defendant's Claim is Moot

When analyzing whether a charge in the original complaint is subject to dismissal for a speedy trial violation; courts have consistently held that even subsequently indicted charges arising "from the same criminal episode as those specified in the original complaint" or that "were known or reasonably should have been known at the time of the complaint" are not subject to

7

dismissal.   *See United States v. Gaskin*, 364 F.3d 438, 451-52 (2d Cir. 2004) (collecting cases and discussing the application of the Speedy Trial Act in relation to subsequently brought counts). Here, the defendant was detained on the robbery count charged in Count Two of the indictment. The remaining counts subsequently charged in the indictment are not in any way affected by the IADA.   Therefore, Counts One, Three and Four of the indictment can, in no way, be affected by the defendant's claims.   This leaves only Count Two of the indictment at issue.

The defendant's claim that a Violation of the IADA became moot when Count Two of the indictment was dismissed, on the United States' motion, as part of the plea agreement.   Article III of the United States Constitution grants the federal courts jurisdiction over "cases" and "controversies."   U.S. Const. art. III, § 2, cl. 1.   This language bars adjudication of issues that have already been resolved.   "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come."   *Powell v. McCormack,* 395 U.S. 486, 496, 89 S. Ct. 1944 (1969).   "This occurs when, among other things, the court can provide no effective remedy because a party has already 'obtained all the relief that [it has] sought.' "   *Conservation Force, Inc. v. Jewell,* 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Monzillo v. Biller,* 735 F.2d 1456, 1459 (D.C. Cir. 1984)).   Here, the defendant already received the relief he is seeking when Count Two of the indictment was dismissed in conjunction with his plea agreement.   Accordingly, for this reason as well, his motion should be denied.

## **CONCLUSION**

For the above-stated reasons, this Court should deny the defendant's motion to dismiss the Indictment.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
    Jonathan L. Fahey
    Michael J. Frank
    Assistant United States Attorneys
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, VA 22314

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2015, I filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Denise Tassi, Esq.


By:      _____/s/_____
         Jonathan L. Fahey
         Assistant United States Attorney