1

1                 UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                 ALEXANDRIA DIVISION

3  UNITED STATES OF AMERICA,   )  Case 1:15-cr-00003
                    )
4          Plaintiff,   )
                    )
5      v.           )  Alexandria, Virginia
                    )  April 21, 2015
6  LAMONT ANDRE THOMAS,     )  9:34 a.m.
                    )
7          Defendant.   )
   _____)  Pages 1 - 22
8

9       TRANSCRIPT OF CHANGE OF PLEA HEARING

10     BEFORE THE HONORABLE ANTHONY J. TRENGA

11      UNITED STATES DISTRICT COURT JUDGE

12

APPEARANCES:

13

FOR THE PLAINTIFF:

14

15      JONATHAN L. FAHEY, ESQUIRE
      OFFICE OF THE UNITED STATES ATTORNEY
      2100 Jamieson Avenue
16      Alexandria, Virginia  22314
      (703) 299-3700

17

FOR THE DEFENDANT:

18

19      DENISE J. TASSI, ESQUIRE
      221 South Fayette Street
      Alexandria, Virginia  22314
20      (703) 836-9080

21  THE DEFENDANT, LAMONT ANDRE THOMAS, IN PERSON

22

23

24

25   COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1          THE CLERK:  Criminal Case 1:15-cr-3, *United*
2  *States of America v. Lamont Andre Thomas*.

3          Will counsel please identify themselves for
4  the record.

5          MR. FAHEY:  Good morning, Your Honor.
6  Jonathan Fahey for the United States.

7          THE COURT:  Good morning.

8          MS. TASSI:  Good morning, Your Honor.  Denise
9  Tassi on behalf of Mr. Thomas.

10          THE COURT:  Good morning, Ms. Tassi.

11          We're here, I understand, on a change of
12  plea, a post-indictment plea pursuant to a statement of
13  facts and plea agreement.  Is that correct?

14          MS. TASSI:  That is correct, Your Honor.

15          THE COURT:  All right.  Mr. Thomas, will you
16  come to the podium and be sworn, please.

17      (The defendant affirms.)

18          THE COURT:  Would you state your full name,
19  please.

20          THE DEFENDANT:  Lamont Andre Thomas.

21          THE COURT:  Mr. Thomas, the purpose of this
22  hearing is to give you the opportunity to enter a plea
23  of guilty to the charge of using and carry a firearm
24  during and in relation to a crime of violence.  If you
25  enter such a plea, it will be the responsibility of

1  this Court to ensure that your plea is entered

2  voluntarily, that is that no one is forcing you to

3  enter a guilty plea, and that your plea is not being

4  induced by any promises or agreements other than those

5  in your plea agreement.

6          The Court is also obligated to ensure that

7  your plea is entered knowingly, that is that you

8  understand the consequences of pleading guilty.  In

9  order for the Court to make those determinations, I

10 will ask you a series of questions.  For that purpose,

11 you've been placed under oath.  Having been placed

12 under oath, you have the obligation to answer all of

13 the Court's questions truthfully.  If any of your

14 answers prove to be untrue, you may be subjecting

15 yourself to additional criminal penalties.

16          Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  What is your age?

19          THE DEFENDANT:  Twenty-seven.

20          THE COURT:  And what is your highest level of

21 formal education?

22          THE DEFENDANT:  I completed high school, some

23 college.

24          THE COURT:  All right.  You read, write, and

25 understand the English language?

4

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  And you're a citizen of the

3  United States?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  You've been represented by a

6  lawyer in connection with this charge; is that correct?

7            THE DEFENDANT:  I have.

8            THE COURT:  You've met with your lawyer?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Has your lawyer explained to you

11  the nature of the charge against you to which you would

12  plead guilty and what the government must prove in

13  order to convict you of that charge?

14            THE DEFENDANT:  She has.

15            THE COURT:  Has Ms. Tassi explained to you

16  the consequences of pleading guilty?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Have you understood everything

19  your lawyer has told you?

20            THE DEFENDANT:  Everything.

21            THE COURT:  Have you had all your questions

22  answered?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Have you supplied and provided

25  all the information and facts you know pertaining to

1  this charge?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you had any difficulty

4  understanding anything your lawyer has told you,

5  anything about the nature of the charge, or anything

6  about these proceedings, including why you're in court

7  here today?

8          THE DEFENDANT:  No.  I understand fully.

9          THE COURT:  All right.  Do you think you've

10 had enough time to meet with your lawyer and discuss

11 and decide whether or not you should be entering a

12 guilty plea at this point?

13         THE DEFENDANT:  Yes, I had time.

14         THE COURT:  Have you been under the influence

15 of any drugs or medication or any other substance

16 that's affected your ability to understand anything

17 about these charges or anything about these

18 proceedings?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  Are you currently under the care

21 of any mental health professional?

22         THE DEFENDANT:  No.

23         THE COURT:  Ms. Tassi, based on everything

24 you know, is Mr. Thomas competent to enter a guilty

25 plea here today?

1            MS. TASSI:  Yes, he is, Your Honor.

2            THE COURT:  Mr. Thomas, you understand that

3  the charge to which you would plead guilty is using and

4  carrying a firearm during and in relation to a crime of

5  violence?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Do you understand that by

8  pleading guilty, you will be convicted of that charge

9  just as if you had gone to trial on your plea of not

10 guilty and were convicted by a jury?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  And has Ms. Tassi explained to

13 you the maximum punishment you could receive based on

14 the conviction that would result from your guilty plea?

15           THE DEFENDANT:  Yes, she has.

16           THE COURT:  The maximum punishment you could

17 receive is a term of 7 years to life.  Do you

18 understand that?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Do you understand that there's a

21 mandatory minimum of 7 years of incarceration for this

22 charge?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  You could also be fined up to

25 $250,000 together with a $100 special assessment that

1  will be imposed together with a period of supervised

2  release of not more than 5 years.  Do you understand

3  that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Supervised release is an aspect

6  of a sentence that's in addition to any term of

7  incarceration.  It would begin after your release from

8  any term of incarceration, and you would have certain

9  conditions that you would have to comply with.  And if

10 you failed to comply with any of those conditions, you

11 could be returned to prison for all or part of that

12 period of supervised release even if you had

13 successfully completed a portion of it.  Do you

14 understand that's the nature of supervised release?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Also, under our federal system,

17 parole has been abolished so that you will, in fact,

18 serve the full length of any term of imprisonment

19 subject only to a relatively modest reduction based on

20 good behavior.  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  I understand that you have

23 entered into a written plea agreement.  Is that

24 correct?

25          THE DEFENDANT:  Yes.

1            THE COURT:  Do you have that document in

2   front of you?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Did you sign that document?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And your signature appears on

7   that document?

8            THE DEFENDANT:  Yes.

9            THE COURT:  You have read that document?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Did you have all your questions

12   answered about that document?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Did you understand everything in

15   that document?

16            THE DEFENDANT:  I understand everything in

17   it.

18            THE COURT:  Did anyone threaten you or try to

19   influence you in any way into signing that written plea

20   agreement against your will?

21            THE DEFENDANT:  No.

22            THE COURT:  Does this written plea agreement

23   represent the entire agreement you think you have with

24   the United States government?

25            THE DEFENDANT:  As far as to my knowledge,

1   yes.

2         THE COURT:  Do you think you have any other

3   promises or agreements or understandings with the

4   United States government other than what is in this

5   written plea agreement?

6         THE DEFENDANT:  Not that I know of.

7         THE COURT:  All right.  If you were to go to

8   trial in this case and if after that trial you were

9   convicted, you would have the right to appeal that

10   conviction to a higher court together with any sentence

11   that's imposed.  Under this plea agreement, you waive,

12   that is you give up your right to appeal the conviction

13   that would result from your guilty plea together with

14   any sentence that's imposed based on that guilty plea.

15   Do you understand that you have waived your right of

16   appeal?

17         THE DEFENDANT:  I understand.

18         THE COURT:  You have spoken with your lawyer

19   about whether you should waive your right of appeal?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Also, under this plea agreement,

22   you agree to the entry of a forfeiture order with

23   respect to any theft-related assets that you may own or

24   have control over, including the entry of a money

25   judgment in the amount of $850.  Do you understand that

1   you have agreed to the entry of such a forfeiture

2   order?

3               THE DEFENDANT:  Yes.

4               THE COURT:  You also have agreed to the entry

5   of a restitution judgment which is mandatory for this

6   offense.  Do you understand that you have also agreed

7   to the entry of a restitution order?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Have you discussed with your

10  lawyer the constitutional rights you have as someone

11  charged with a crime and that you would give up, that

12  is waive those rights by pleading guilty?

13              THE DEFENDANT:  Yes.

14              THE COURT:  You have the absolute right to

15  proceed to trial on your not guilty plea and to have a

16  public and speedy trial before a jury of 12 United

17  States citizens.  Do you understand that?

18              THE DEFENDANT:  Yes, I understand.

19              THE COURT:  At that trial, you would be

20  entitled to be represented by a lawyer, and if you

21  could not afford one, one would be appointed for you.

22  Do you understand?

23              THE DEFENDANT:  Yes.

24              THE COURT:  At that trial, you would be

25  presumed innocent, and the government would have the

1   obligation of proving beyond a reasonable doubt each

2   and every element of the charge against you.  Do you

3   understand?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Also, at that trial, you and your

6   lawyer would have the right to confront any witnesses

7   that the government presented, to cross-examine those

8   witnesses, and to challenge the admissibility of any

9   evidence that the government offered.  Do you

10  understand?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Also, as part of that trial, you

13  would have the right to present your own defense, and

14  that would include the right to require any person with

15  relevant information to be brought into court and

16  testify and to bring with him or her any documents

17  relevant to this charge against you.  Do you

18  understand?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Also, as part of your defense,

21  you could testify yourself.  You could take the stand,

22  be placed under oath, and testify subject to

23  cross-examination, but you would have absolutely no

24  obligation to testify.  You could remain silent in the

25  face of this charge, and if you decided not to testify,

1   the government could not force you to testify or to

2   incriminate yourself in any way.  Do you understand

3   that?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Also, if you decided not to

6   testify, no inference of guilt could be inferred from

7   the fact that you decided not to testify.  You would

8   continue to be presumed innocent of this charge, and

9   the government would continue to have the obligation of

10  proving beyond a reasonable doubt each and every

11  element of this charge against you.  Do you understand

12  that?

13               THE DEFENDANT:  Yes.

14               THE COURT:  And if after that trial you were

15  convicted, you would be entitled, as I mentioned

16  earlier, to appeal that conviction and any sentence to

17  a higher court.  Do you understand?

18               THE DEFENDANT:  Yes.

19               THE COURT:  By pleading guilty, there will be

20  no trial in this case.  All that would be left for the

21  Court to do would be to decide what sentence to impose.

22  Do you understand that?

23               THE DEFENDANT:  I understand.

24               THE COURT:  Also, by pleading guilty, you

25  would waive all of these constitutional rights that I

1    mentioned.  Do you understand that?

2              THE DEFENDANT:  I understand.

3              THE COURT:  Also, in addition to these rights

4    that I've mentioned, there will be other consequences

5    as a result of your guilty plea.  That would include

6    any right you might have to vote, to hold public

7    office, to serve on a jury, and possess a firearm.  Do

8    you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Have you discussed with Ms. Tassi

11   how the Court will go about deciding what sentence to

12   impose in this case?

13             THE DEFENDANT:  We talked about it.

14             THE COURT:  Have you discussed what we refer

15   to as the sentencing guidelines and how they pertain to

16   you and your offense?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Those are only guidelines.  The

19   Court --

20             THE DEFENDANT:  One second, Your Honor.

21        (Ms. Tassi and the defendant confer.)

22             THE DEFENDANT:  Yes.

23             THE COURT:  Those are only guidelines.

24             MS. TASSI:  Just to explain what happened,

25   there are no guidelines in this case, Your Honor.

1            THE COURT:  It's just the 7-year mandatory?

2            MS. TASSI:  Yes.

3            THE COURT:  All right.  Do you understand

4   that it's subject to the statutory mandatory minimum

5   7-year sentence?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  Do you also understand

8   that -- well, under the guidelines, there's a

9   probability you could get in excess of 7 years.  Do you

10  understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And that it's going to be up to

13  the Court to decide what the appropriate sentence is

14  subject to the 7-year mandatory minimum?  Do you

15  understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Also, the Court in that regard

18  will take into account the nature and seriousness of

19  the offense, your own personal history and

20  characteristics, and generally what sentence will be

21  sufficient but no more than necessary to constitute a

22  just punishment and to protect the public.  Do you

23  understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Also, the Court will not be bound

 1  by any recommendations so that if you receive a

 2  sentence that's different than what the government

 3  recommends or what your lawyer recommends or if you

 4  receive a sentence that's different than what you're

 5  expecting or what somebody told you you're likely to

 6  receive or if you receive a sentence that you think is

 7  just unfair under the circumstances, you nevertheless

 8  are going to be bound by your guilty plea, and you will

 9  not be permitted to withdraw your guilty plea after you

10  hear what the sentence is.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  In a moment, I'm going to ask

13  Mr. Fahey to tell the Court what evidence it would

14  present if this case were to go to trial.  I want you

15  to listen carefully to what the government tells the

16  Court.  Because when the government is done, I'm going

17  to ask you whether you disagree with anything the

18  government has told the Court about your conduct.

19          Have a seat for a moment, and we'll hear from

20  the government.

21          Mr. Fahey.

22          MR. FAHEY:  Your Honor, at trial, the

23  government would prove that in February 2010, the

24  defendant's brother, Eugene Thomas, was committing a

25  series of robberies of gas stations and convenience

1   stores within the Eastern District of Virginia.  The

2   defendant learned of this and entered into an agreement

3   with his brother to help him during these robberies.

4   The defendant's understanding was that his brother

5   would be armed with a firearm during the robberies,

6   would enter the store and brandish the firearm in order

7   to obtain cash from these stores.

8           In furtherance of their agreement, they

9   committed three robberies together.  In all three of

10  them, the defendant's brother entered the store and

11  robbed it, and the defendant aided him by helping him

12  in such ways as casing it and doing surveillance.

13          Specifically, they committed three robberies.

14  One was on February 13, 2010, which was a Shell gas

15  station on Backlick Road in Fairfax County, the Eastern

16  District of Virginia.  They robbed a 7-Eleven on

17  Rolling Road in Fairfax County, the Eastern District of

18  Virginia.

19          On March 19, 2010, that's the one that's

20  related to the firearm count.  During this robbery, the

21  defendant entered the store before the robbery to case

22  the store and make sure that there was no one else

23  around and it was safe to rob.  The defendant's conduct

24  was captured on videotape.  Shortly after the defendant

25  cased the store, his brother came in, Eugene Thomas,

1   with a firearm to rob it, brandished the firearm, and

2   demanded money from the clerk.  The clerk complied with

3   his demands and provided him money.  After the robbery,

4   the defendant and his brother split the proceeds of the

5   robbery.

6           They also committed a third robbery on

7   March 28, 2010, which was another Shell gas station.

8   This was on Old Keene Mill in Fairfax County, the

9   Eastern District of Virginia.  Again, the facts were

10  similar.  The defendant's brother went in with a

11  firearm, robbed the store, and they divided the

12  proceeds afterwards.

13          In all of the robberies they committed

14  together, the defendant's brother was armed and the

15  defendant knew he was armed, all three of them.  Then

16  they split the proceeds afterwards.

17          All the stores robbed, including the

18  7-Eleven, were stores that operated in interstate

19  commerce.  The robberies depleted the assets of these

20  stores thereby affecting interstate commerce.

21          Your Honor, those essentially would be what

22  we would prove at trial.

23          THE COURT:  All right.  Mr. Thomas, would you

24  return to the podium.

25          Do you disagree with anything the government

1  has told the Court?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  I understand you've also signed a

4  written statement of facts.  Is that correct?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you have that document in

7  front of you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Did you sign that document, and

10  does your signature appear on that document?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Did you read that document,

13  understand everything in that document, and have all

14  your questions answered about that document?

15              THE DEFENDANT:  Yes, I had the questions

16  answered.

17              THE COURT:  And you understood everything in

18  that document?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Did anyone threaten you or try to

21  influence you in any way into signing that written

22  statement of facts against your will?

23              THE DEFENDANT:  No.

24              THE COURT:  Are the statements in this

25  written statement of facts true and correct?

1              THE DEFENDANT:  They are.

2              THE COURT:  And is it your decision here

3  today to enter a guilty plea because you are, in fact,

4  guilty of what you've been charged with?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Ms. Tassi, based on everything

7  you know, is there an adequate factual basis for the

8  plea in this case?

9              MS. TASSI:  Yes, there is, Your Honor.

10             THE COURT:  Before pleading to Count 4 of the

11  indictment, do you wish to speak with your lawyer any

12  further?

13             THE DEFENDANT:  One second.

14        (Ms. Tassi and the defendant confer.)

15             THE DEFENDANT:  Yes.

16             THE COURT:  Are you ready to proceed?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  All right.  With respect to

19  Count 4 of the indictment charging using and carrying a

20  firearm during and in relation to a crime of violence,

21  in violation of Title 18, United States Code,

22  Section 924(c)(1)(A)(ii) and 2, how do you plead?

23  Guilty or not guilty?

24             THE DEFENDANT:  Guilty.

25             THE COURT:  Let the record reflect that based

1  on the responses of this defendant to the Court's

2  questions, the representations of counsel for the

3  government and for the defendant, it is the finding of

4  this Court in the case of *United States v. Lamont Andre*

5  *Thomas* that the defendant is fully competent and

6  capable of entering an informed plea, that the

7  defendant is aware of the nature of the charges and the

8  consequences of the plea, and that the plea of guilty

9  is a knowing and voluntary plea supported by an

10 independent basis in fact containing each of the

11 essential elements of that offense.  The plea is,

12 therefore, accepted, and the defendant is now adjudged

13 guilty of that offense.

14         Mr. Thomas, you're not going to be sentenced

15 today.  I'm going to put this matter down for

16 sentencing on Judge Lee's calendar for July 31 at

17 9:00 a.m.

18         Between now and then, you'll have the

19 opportunity to be interviewed by a representative of

20 pretrial services and probation, and that will be an

21 opportunity for you to share with that office, and

22 through that office, this Court any information you

23 think would be helpful to the Court in deciding what

24 sentence to impose.  You may be accompanied by your

25 lawyer during that interview.

1             MS. TASSI:  Your Honor --

2             THE COURT:  Yes.

3             MS. TASSI:  -- I'm sorry.  I will be on

4    vacation on July --

5             THE COURT:  All right.  How about August 7?

6             MS. TASSI:  That's fine, Your Honor.

7             THE COURT:  All right.  Mr. Thomas, I'm

8    setting this down for sentencing on August 7 at

9    9:00 a.m.  Between now and when you return to court for

10   sentencing on August 7, you'll be remanded to the

11   custody of the United States Marshal.

12            THE DEFENDANT:  All right.

13            THE COURT:  Is there anything further?

14            MR. FAHEY:  Your Honor, as part of the plea

15   agreement, we move to dismiss Counts 1 through 3 of the

16   pending indictment.  I submitted a proposed motion

17   or -- oh, I think it's still in front of Ms. Tassi.

18   I'm sorry.

19        (Documents are passed up to the Court.)

20            THE CLERK:  Mr. Fahey, you have this dated

21   July 14.  Do you want the judge to just change the

22   date?

23            MR. FAHEY:  Yes.  Thank you.

24            THE COURT:  I've dated it today, and I've

25   signed the order dismissing Counts 1 through 3 of the

1   indictment.

2           Anything further?

3           MR. FAHEY:  No.  Thank you, Your Honor.

4           THE COURT:  All right.  The Court will stand

5   in recess.

6           ------------------------------------
                    Time:  9:54 a.m.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
        I certify that the foregoing is a true and
22
    accurate transcription of my stenographic notes.
23

24
                              _____
                                    /s/
25                            Rhonda F. Montgomery, CCR, RPR